IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA PONCE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. EP-09-CV-0364-ML |
| | ) | (by consent) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA" respectively), denying Maria Ponce's application for Disability Insurance Benefits (DIB) and Widow's Benefits (WB) under Title II of the Social Security Act and additionally Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C.§ 405(g).

For the reasons set forth in this opinion, this court finds that the Commissioner's decision should be, and is hereby, AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed her applications for DIB, WB, and SSI benefits on July 20, 2007, alleging a disability since February 26, 2007. **Administrative Record ("R.") at 13, 73-85**. Plaintiff's applications were initially denied on September 13, 2007, **R. at 40-47**, and were denied on reconsideration on February 19, 2008, **R. at 49-53.** Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") was timely received by the SSA. **R. at 21-28, 34-39.**

A hearing was held on September 9, 2008, before ALJ George Reyes in El Paso, Texas. **R. at 244-267.** Plaintiff was represented by counsel at the hearing and assisted by an interpreter. **R. at 27-28, 244-267.** Testimony of a vocational expert ("VE") was also presented at the hearing. **R. at 26, 264-266.** The ALJ issued an unfavorable decision on November 26, 2008. **R. at 10-20.** Plaintiff entered a timely request for review by the Appeals Council on January 14, 2009. **R. at 6-9.** The Appeals Council denied the request for review on April 29, 2009. **R. at 3-5.**

Having exhausted her administrative remedies, Plaintiff submitted her request for judicial review with the United States District Court for the Western District of Texas, El Paso Division, on October 5, 2009. **Docket Entry ("D.E.") 1, 6.** The case was assigned to United States District Court Judge Kathleen Cardone. On January 21, 2010, Defendant filed a motion to dismiss for lack of jurisdiction, to which Plaintiff filed a response in opposition and affidavit on February 4, 2010. **D.E. 18-20.** On March 22, 2010, the Honorable Michael McDonald filed a report and recommendation, recommending that the Defendant's motion to dismiss be denied. **D.E. at 21.** Thereafter, the Honorable Kathleen Cardone entered an order adopting that report and recommendation. **D.E. at 22.** The Defendant then filed an answer on May 25, 2010. **D.E. at 23.** Both parties having consented to proceed before a U.S. Magistrate Judge, the case was reassigned to United States Magistrate Judge Michael S. McDonald on May 26, 2010. **D.E. 3, 24.** Judge McDonald entered a briefing order on May 27, 2010. **D.E. 27.** Plaintiff filed her brief on August 31, 2010. **D.E. 32.** Defendant filed his brief on September 27, 2010. **D.E. 34.**

Upon the retirement of the Honorable Michael S. McDonald, the case was transferred to the docket of this court on July 6, 2010. **D.E. 29.** Both parties reaffirmed their consent to proceed

before a U.S. Magistrate Judge.  **D.E. 30, 35.**  Therefore this court, having considered the matter upon that consent, renders the following decision:

## ISSUE

The sole issue raised by Plaintiff is whether the ALJ erred by rejecting the treating physician's opinion.  **D.E. 32 at 1.**

## STANDARD OF REVIEW

This Court's review of the Commissioner's final decision is limited to whether it is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence.  **Myers v. Apfel, 238 F.3d 617, 619 (5th Cir. 2001) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. denied, 514 U.S. 1120 (1995)) (in turn citing 42 U.S.C. §§ 405(g), 1383(c)(3))**.  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  **Newton v. Apfel, 209 F. 3d 448, 452 (5th Cir. 2000) (quoting Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995) (in turn citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and Greenspan v. Shalala, 38 F.3d at 236)).**

In applying the substantial-evidence standard, this court must carefully examine the entire record, but may not re-weigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner.  **Myers v. Apfel, 238 F.3d at 619.**  Conflicts in the evidence should be resolved by the Commissioner and not the courts.  **Spellman v. Shalala, 1 F. 3d 357, 360 (5th Cir. 1993)**.

While the standard is high, a finding of "no substantial evidence" may be made when there is a "conspicuous absence of credible choices" or "no contrary medical evidence." **Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).** However, "the substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the Secretary's decision. We must consider the record as a whole, and the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." **Singletary v. Bowen, 798 F. 2d 818, 823 (5th Cir. 1986) (citations omitted)**. The Court has the power to enter, upon the pleadings and transcript of the record, judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for rehearing.

### STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An individual applying for benefits bears the initial burden of proving disability for purposes of the Social Security Act. **Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990).** A disability is defined as a medically determinable physical or mental impairment lasting or expected to last at least 12 months that prevents the individual from engaging in substantial gainful activity. **42 U.S.C. §§ 216(i), 223(d)(1)(A), 1614(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).**[1]

Disability claims such as those in this case are evaluated according to a five-step process. **20 C.F.R. §§ 404.1520(a), 416.920(a); Myers v. Apfel, 238 F. 3d at 619; Newton v. Apfel, 209 F. 3d at 452-453.** A finding that a given claimant is disabled or not disabled at any point in the analysis is conclusive and terminates the Commissioner's analysis. **20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);** *see* **Greenspan v. Shalala, 38 F. 3d at 236**.

---

[1] In this opinion, the Court refers to the Code of Federal Regulations revised on April 1, 2008, which was in effect when the ALJ's opinion was signed.

The first step involves a determination by the ALJ as to whether the claimant is presently engaged in substantial gainful activity ("SGA"), which is defined as work activity involving the use of significant physical or mental abilities to perform work that is usually performed for pay or profit. **20 C.F.R. §§ 404.1510, 404.1520(a)(4)(I), 404.1572(a),(b), 416.920(b), 416.972(a),(b).** If this is so, the claimant is to be found not disabled, irrespective of that claimant's age, education, medical condition, or work experience. **20 C.F.R. §§ 404.1520(b), 416.920(b).**

Under the second step of the evaluation, a determination is made as to whether the claimant's impairment is severe. **20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).** A medically determinable impairment (or combination of impairments) that meets the duration requirement is severe if it significantly limits an individual's physical or mental ability to do basic work activities. **20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921.** If the impairment is not severe, the claimant is deemed not disabled. **20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii).**

In the third step of the evaluation, the impairment is compared to a list of specific, defined impairments contained in Appendix 1 of the regulations. **20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), (d), 416.925, 416.926.** If the claimant's impairment meets or exceeds a listed impairment, he is deemed disabled irrespective of age, education, and work experience considerations. **20 C.F.R. §§ 404.1520(d), 416.920(d).**

If the impairment does not meet or equal a listed impairment, the fourth step requires a review of the claimant's residual functioning capacity ("RFC") and the demands of the claimant's past relevant work ("PRW"). **20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e).** If the claimant can still do the same kind of work, the claimant will not be considered disabled. **20 C.F.R. §§ 404.1520(f), 416.920(f).**

If the claimant cannot perform PRW, the fifth and final step is employed to evaluate the claimant's ability, taking into account age, education, work experience, and residual capacities, to do other work. **20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).** If the claimant cannot do other work, the claimant will be found disabled. **20 C.F.R. §§ 404.1520(g), 416.920(g).**

The claimant bears the burden of proof on the first four steps of the sequential analysis. **Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987).** Once this burden is met, the burden shifts to the Commissioner to show there is other substantial gainful employment available that the claimant is capable of performing. **Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).** The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. **Rivers v. Schweiker, 684 F.2d 1144, 1155 (5th Cir. 1982).** If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. **Anderson v. Sullivan, 887 F.2d at 632-33.**

## ANALYSIS

**I.  Whether the ALJ's rejection of the opinion of Plaintiff's treating physician requires reversal.**

Plaintiff claims the ALJ's decision to accord little weight to the opinion provided by Plaintiff's treating physician requires reversal. Plaintiff contends that had the ALJ accorded Plaintiff's treating physician's opinion the proper deference, the ALJ would have found that Plaintiff was only able to perform sedentary work and would therefore have been required to proceed to Step Five in the analysis, at which he would have found Plaintiff disabled.

The ALJ found that Plaintiff suffered the following severe impairments: diabetes, spinal degenerative changes, osteopenia, a restricted range of motion in the right shoulder, and obesity. **R. at 16.** The ALJ found that Plaintiff's mood disorder did not result in severe impairments. **R. at 16-17.** Nor did the ALJ find that Plaintiff's kidney problems were medically determinable or severe. **R. at 16-17.** The ALJ further found that Plaintiff's impairments or the combinations of impairments did not meet or medically equal any of the relevant listed impairments. **R. at 17.** The ALJ then found that Plaintiff retained the residual functional capacity (RFC) to perform her prior work as a sewing machine operator in the manner it is performed generally in the national economy. **R. at 17-19.** The ALJ found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, could sit six cumulative hours per workday, and could stand and walk six cumulative hours per workday, but that she could not reach overhead with her dominant right arm. **R. at 17.**

In determining that Plaintiff retained the RFC to perform her prior work, the ALJ noted that he had considered all of Plaintiff's symptoms, the extent to which the symptoms could be considered as consistent with the objective medical evidence, opinion and other evidence as required by and in accordance with the dictates of the relevant regulations. **R. at 17.** After outlining the medical evidence provided as well as Plaintiff's testimony at the hearing, the ALJ concluded that Plaintiff's medically determinable impairments could be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. **R. at 18.** The ALJ further found that the opinion of Dr. Holguin was "without substantial support from the other evidence of record, which renders it less persuasive." **R. at 18.** He noted the opinion evidence of Dr. Holguin "depart[ed] substantially from the rest of the evidence in the record. . . . [and was] quite

conclusory, providing very little explanation of the objective evidence relied on in forming that opinion." **Id.**  The ALJ found that Dr. Holguin's opinion should be "afforded little evidentiary weight, especially in view of the fact [that] he has not provided any treatment notes or test results to support his opinion. . . . [and] the record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date." **Id.**

Despite two requests by the SSA for Dr. Holguin and his clinic to provide his records regarding his treatment of the Plaintiff, he failed to do so. **R. at 190-91, 211-12.**  Despite Plaintiff having the benefit of counsel representing her throughout the process, no treatment records, progress notes, or test results were provided.  Instead, only two items were provided by Dr. Holguin: a letter outlining Plaintiff's condition, dated September 2, 2008; and a Medical Source Statement of Ability to Do Work-Related Activities (Physical), dated August 12, 2008. **R. at 141, 150-53.**  In the letter, Dr. Holguin simply states:

> This is to notify that Mrs. Maria Delfina Ponce of 55 years age [sic] has been my patient, concerning her chronic degenerative diseases.  The mean [sic] one is Diabetes Mellitus of twelve years length, arthritis of her both hands and spine, besides of [sic] osteoporosis.  This disturbs [sic] have made complications of her psicomotriz [sic] movements, manipulation, and postures, reason that she can not perform minor duties due the natural evolution of these chronic disorders.  She was involved in some labor accidents that made worse her symptoms.
>
> Now she is unable to work and she must continue her medical attention with reference to physical therapy.

**R. at 141.**

Dr. Holguin also completed the Medical Source Statement of Ability to Do Work-Related Activities (Physical) in which he indicates Plaintiff can occasionally and frequently lift less than ten

pounds, can stand or walk less than two hours per day, can sit less than six hours per day, and has limitations in her ability to push or pull with both upper and low extremities. **R. at 150-51.** Dr. Holguin advised that Plaintiff has an unstable spine due to osteoporosis and chronic arthritis, high blood pressure, and diabetes mellitus with chronic complications. **R. at 151.** Despite these limitations, Dr. Holguin indicated that Plaintiff could frequently climb, balance, kneel, crouch, crawl and stoop. **Id.** He opined that Plaintiff's ability to reach in all directions, finger, handle and feel were all limited, but that she could perform each of these functions frequently. **R. at 152.** Dr. Holguin noted that Plaintiff's vision was limited by her need to wear bifocal lenses. **Id.** Finally, Dr. Holguin noted that Plaintiff's environment had to be limited in the form of temperature extremes, noise, dust, vibration, humidity, hazards, fumes, and odors as a result of her diabetes and its complications, arthritis, osteoporosis, unstable spine, and high blood pressure. **R. at 153.** Despite an admonishment on the form that advised Dr. Holguin that the SSA is "required to consider the extent to which your assessment is supported," Dr. Holguin's comments were conclusory in nature, and again no treatment notes, clinical or laboratory findings were provided. ***See*** **R. at 150.**

The Plaintiff's disability report reveals that a face to face interview was conducted, and that during that interview no deficits with Plaintiff's hearing, reading, breathing, understanding, concentration, talking, sitting, standing, walking, vision, hand movement or writing were noted. **R. at 87.** The interviewer did note that Plaintiff had to hold onto the table and chair when standing. **Id.**

Plaintiff was referred to Dr. Zulfiqar Ahmed for diagnostic testing and a medical assessment. **R. at 157-81.** He noted Plaintiff's chief complaints to include diabetes mellitus II, hypertension, osteoporosis and lower back pain. **R. at 171.** Dr. Ahmed ordered a battery of tests, including chest

9

xrays, lumbar spine xrays, a complete hip bilateral xray, and an ECG. **R. at 157-81.** Plaintiff reported to Dr. Ahmed that she had last seen Dr. Holguin in May 2007 after ceasing her employment in February 2007. **R. at 171.** Dr. Ahmed reported that Plaintiff was first diagnosed with diabetes and hypertension ten years prior and with osteoporosis five years prior. **R. at 171-72.** A review of Plaintiff's systems revealed normal results. **R. at 173.** A physical examination of Plaintiff's head, eyes, mouth, nose, throat, ears, neck, chest, cardiovascular system, abdomen, and extremities were normal. **R. at 174-75.** A musculoskeletal examination revealed that Plaintiff suffers shoulder pain with elevation of the arm, but that she could attain a full range of motion with encouragement and with passive elevation. **R. at 175.** On her own, Plaintiff could elevate her arm only 90 degrees. **Id.** No acute synovitis, musculoskeletal spasms or wasting were noted in the right shoulder, and no acute synovitis, musculoskeletal spasms or wasting or focal tenderness were noted in the left shoulder or her hands. **Id.** Plaintiff demonstrated a good grasp with both hands. **Id.** Dr. Ahmed noted pain in Plaintiff's lumbar and lower thoracic spine with deep palpatation, that bending at the spine was limited to 45 degrees. **Id.** Dr. Ahmed noted some spinal muscle spasms. **Id.** Negative results were noted from the straight leg raising test. **Id.** The doctor concluded that Plaintiff could not sit in a squatting position because of back and hip pain. **Id.** Plaintiff demonstrated pain with full range of right hip motion, but Dr. Ahmed noted that she did have a normal range of motion. **Id.** An examination of the left hip, knee joints, and ankle joints revealed no acute problem, no acute musculoskeletal spasms, no wasting, no joint effusion, no acute synovitis, and no focal tenderness. **Id.** Plaintiff's gait was steady; she walked heel to toe without any problems. **Id.** Plaintiff's neurological examination revealed no abnormalities. **Id.**

The hip xrays revealed mild degenerative changes in both hips with the left greater than the right, and evidence of vascular calcifications. **R. at 176.** The lumbar spine xrays revealed osteopenia, moderate degenerative changes to the lumbosacral spine, and mild degenerative changes to the sacroiliac joints with the left being greater than the right. **Id.** The chest xray revealed no active cardiopulmonary disease, but it revealed osteopenia and moderate degenerative changes in the thoracic spine and intervertebral disc. **Id.** Plaintiff's ECG was abnormal. **Id.**

Dr. Ahmed's diagnostic impressions were that Plaintiff suffered from lower back pain, likely resulting from degenerative arthritis, right hip pain, likely due to arthritis, right shoulder pain, and likely rotator cuff syndrom, diabetes, hypertension, and obesity. **R. at 176.** Dr. Ahmed opined that Plaintiff could perform her usual activities of daily living without any kind of significant problems if it did not involve any heavy strenuous activities. **Id.**

Thereafter, a residual functional capacity assessment was completed by Dr. John Durfor, who concluded that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to ten pounds, could stand or walk at least 2 hours per day and sit for about 6 hours per day, unlimited pushing or pulling other than for lifting or carrying. **R. at 183.** He found no postural, manipulative, communicative, environmental or visual limitations. **R. at 184-86.** He concluded that the limitations set forth by Dr. Ahmed in the "history of Present Illness," lifting 10 pounds or less, walking only 1-2 blocks, sitting for 15-20 minutes and standing for only 15-20 minutes, were not supported by the objective evidence. **R. at 188.**

### A.     Consideration of the Section 404.1527(d) Factors

Plaintiff contends that the ALJ erred by failing to discuss the six factors required by 20 C.F.R. §§ 404.1527(d), 416.927(d) in setting forth his reasoning for rejecting Dr. Holguin's opinion. In support of this claim, Plaintiff points to parts of Plaintiff's medical records contained in the administrative record that Plaintiff argues substantiates Dr. Holguin's opinion.

A treating physician's opinion regarding the nature and severity of a patient's condition should be accorded great weight in determining disability and will normally be given controlling weight *if* it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence. **Newton v. Apfel, 209 F. 3d at 455**. The ALJ may, however, give less weight, little weight, or no weight, to the medical opinion of a treating physician when good cause is shown. **Greenspan v. Shalala, 38 F. 3d at 237**. Good cause may be established when a treating physician's statements are conclusory, unsupported, or otherwise incredible. **Id.** An ALJ should provide "good reasons" for the weight given to a treating physician's opinion. **20 C.F.R. § 404.1527(d)(2)**.

The Fifth Circuit concluded that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." **Newton v. Apfel, 209 F. 3d at 453.** Specifically, the regulation requires consideration of:

   1. the physician's length of treatment of the claimant;
   2. the physician's frequency of examination;
   3. the nature and extent of the treatment relationship;
   4. the support of the physician's opinion afforded by the medical evidence of record;
   5. the consistency of the opinion with the record as a whole; and

      6. the specialization of the treating physician.

**20 C.F.R. § 404.1527(d)(2)-(6).** Where such evidence *does* exist in the record, however, consideration of the six factors is not necessary. *See* **Bullock v. Astrue, 277 Fed. Appx. 325, 329 (5th Cir. 2007)**(per curiam)(not published)(consideration of six factors only necessary absent controverting reliable medical evidence from a treating or examining physician**).**

      Plaintiff's argument that there existed some evidence in the record to support Dr. Holguin's opinion misses the mark. As set forth in detail above and further discussed below, the administrative record was replete with reliable medical evidence from examining physicians controverting Plaintiff's treating physician's opinion. Thus, the ALJ was not required to perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). It is sufficient that the ALJ provided "good reasons" for the weight given to Dr. Holguin's opinion. The ALJ, therefore, did not err, and the Plaintiff is not entitled to relief based on the ALJ's failing to address the factors set forth in section 404.1527(d).

      **B.**    **Whether the ALJ's decision is substantially supported**

      Under these circumstances, this Court finds that the ALJ's findings that Dr. Holguin's opinion was "less persuasive," and "without substantial support in the record, " and his decision to afford the opinion "very little evidentiary weight" is substantially supported. An ALJ may decline to give controlling weight to a physician's opinion if (1) it is not supported by medically acceptable clinical and laboratory evidence; or (2) it is inconsistent with other substantial evidence in the record. **Social Security Ruling 96-2p, 1996 WL 374188.** The ALJ is free to reject the opinion of any physician, including the opinion of the treating physician, where the evidence supports a contrary conclusion. **Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).**

Notwithstanding the fact that Dr. Holguin was requested on two occasions to provide his records concerning his treatment of Plaintiff, he failed to do so. No treatment notes, laboratory, clinical or diagnostic test results were provided for Dr. Holguin despite Plaintiff's repeated claim that he had been her primary physician and had treated her for many years. Even Plaintiff's counsel, who represented her throughout the process, did not provide the ALJ with Plaintiff's medical records from Dr. Holguin.[2] Instead, counsel represented that the record before the ALJ was complete. **R. at 247, 267.** The ALJ was given only Dr. Holguin's letter and the Medical Source form completed purportedly by Dr. Holguin. Both were extremely conclusory in nature. And, the Medical Source form contained significant internal inconsistencies. Likewise, Dr. Holguin's treatment of the issues in the Medical Source form was inconsistent with Plaintiff's own statements to Dr. Barrientos, Dr. Ahmed, and the interviewer.[3] Dr. Ahmed's examination of Plaintiff substantially contradicted the information provided by Dr. Holguin in the Medical Source statement. And, Plaintiff's statements to the ALJ, Dr. Barrientos, Dr. Ahmed, and on the various forms she completed during the administrative process were internally inconsistent, undermining her own credibility substantially.[4]

---

[2] The ALJ is entitled to presume that applicants for social security benefits who are represented by counsel are making their best or strongest case for benefits. **Glenn v. Secretary of HHS, 814 F.2d 387, 391 (7th Cir. 1987).**

[3] For example, Plaintiff told Drs. Ahmed and Barrientos that she was able to attend to her daily activities and chores without significant difficulty. **R. at 171, 200.** She advised the interviewer that she was able to attend church and swim twice per week and that each day she exercised, walked, washed clothes, cooked, went to the store and was able to attend to her daily chores independently unless in pain. **R. at 130.**

[4] For example, Plaintiff claimed kidney problems and headaches, yet no where in the materials submitted by Dr. Holguin or Dr. Ahmed is there a reference to kidney problems or headaches; the only reference to kidney problems in the report from Dr. Barrientos was likely supplied by Plaintiff. **R. at 127, 200 (Dr. Barrientos), 251-54.** On the Daily Activity Questionnaire and during the ALJ hearing, she indicated that she could only drive short distances

The record does not support many of the findings set forth by Dr. Holguin in the medical source statement, and many of the findings are not supported or are contradicted by the medically acceptable, clinical, or diagnostic techniques, and it was therefore not error for the ALJ to give little weight to Dr. Holguin's opinion. Instead, the available objective medical evidence supports the Commissioner's decision.

It was Plaintiff's burden to establish that she did not retain the necessary RFC to perform work as a sewing machine operator, and the Record does not support the conclusion that she met this burden. **Anderson v. Spellman, 887 F.2d 630, 634 (5th Cir. 1989).** Considering the record as a whole, the Court finds that there is substantial evidence supporting the Commissioner's decision.

For all the reasons stated above, Plaintiff's claim on this issue does not require reversal or remand.

---

and that she could only do light chores, yet during the interview by the disability examiner and the visits to Drs. Ahmed and Barrientos, Plaintiff indicated that she was able to attend to her daily activities and household chores without significant problems, that she goes to church and swimming twice per week and each day she exercises, walks, washes clothes, cooks, and goes to the store and is able to attend to her personal needs unless experiencing pain. **R. at 127-29, 130, 171, 200, 257-61.** She wore a brace and used a cane at the ALJ hearing and claimed she had been using them for years, but there was no indication they were prescribed for her or that she used those devices when she meet with Dr. Ahmed, Dr. Barrientos, or the SSA interviewer. **R. at 87, 199-202, 248-51, 261-62.** She indicated that her hands hurt, but Dr. Ahmed's examination revealed a strong grip and no evidence of pain. **R. at 175.** These are just a few examples of the inconsistencies in Plaintiff's own statements and in her own behavior. These provide more than a substantial basis for the ALJ to find Plaintiff's own statements less than credible. This Court will not substitute its judgment for that of the ALJ. The ALJ had the opportunity and benefit of "perceiving first-hand the claimant at the hearing." **Falco v. Shalala, 27 F.3d 160, 163 n. 18 (5th Cir. 1994).**

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

**SIGNED** and **ENTERED** on October 22, 2010.

_____
MARGARET F. LEACHMAN
UNITED STATES MAGISTRATE JUDGE